J-S10023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LARONTE O. KING | : | No. 1729 EDA 2022 |

Appeal from the Order Entered June 17, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008659-2021

BEFORE: PANELLA, P.J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED APRIL 18, 2023**

The Commonwealth of Pennsylvania appeals from the order, entered in the Court of Common Pleas of Philadelphia County, granting Laronte O. King's motion to suppress physical evidence recovered from his car pursuant to a search warrant.[1]  After careful review, we reverse and remand for further proceedings.

In March 2021, SEPTA Transit Police Detective Timothy Butler began investigating a Francisville, Philadelphia group with regard to their "involve[ment in] firearms activity." Affidavit of Probable Cause, 4/16/21, at 1. The group had "been stopped numerous times in past narcotics investigations in the area of the SEPTA Girard B[road] S[treet] L[ine] subway station." *Id.* The investigation stemmed from Detective Butler's observation

---

[1] The Commonwealth has certified in its notice of appeal that the order will terminate or substantially handicap the prosecution. *See* Pa.R.A.P. 311(d).

of an Instagram post, authored by an individual named Keith Davis, stating that he was "taking the AVE. back (meaning Girard [A]ve[nue])." *Id.* Davis had been a suspect in a prior narcotics investigation.

Davis' Instagram page had been linked to another Instagram page associated with King. King is a convicted felon who is ineligible to possess a gun. King's Instagram page contained various photos of him posing with firearms, one of which, posted on March 24, 2021, depicts him posing with black and green gun with a silver extractor.[2] King's Instagram page also contained a rap video of him and Davis where King was "observed rapping with a large bulge on his hip believed to be a firearm." *Id.* Finally, another photo posted on King's Instagram page showed King standing in what appeared to be an alley holding a firearm that looked "to be the same firearm as the [black and green gun] observed in the first photo, but with an extended magazine." *Id.* Detective Butler determined that these Instagram video and photos were taken on the 800 block of Perkiomen Street, in the City and County of Philadelphia. *Id.*

On April 5, 2021, Detective Butler observed a story posted on King's Instagram page that included a picture of narcotics and "what appear[ed] to be the butt of the [black and green] firearm of the gun[,] seen in previous post[s,] sitting in a person's lap believed to be King by the looks of the

_____

[2] An extractor "remove[s] spent casings from the chamber of a gun." *See* https://uplandguncompany.com/shotgun-ejectors-and-extractor/ (last visited on 3/17/23).

- 2 -

sweatpants in the picture." *Id.* Later that same day, as he was surveilling the area near King's residence, Detective Butler saw King exit his home, enter a silver Dodge Charger (temp. tag 3539-102), move the car "up and then exit the vehicle." *Id.* King then entered a dark-colored Nissan Maxim[a], sat in the vehicle "for a short amount of time," exited the vehicle, and reentered the Charger and drove away. *Id.* Detective Butler also observed a photo on King's Instagram page in which King was posing in front of the silver Charger "with a bulge in his shirt that was shaped like a firearm." *Id.* at 2. Three days later, on April 8, 2021, Detective Butler saw a video, posted on King's Instagram page, in which King was standing in front of a Philadelphia establishment "rapping a song and at one point the lyrics mentioned a 'nine' refere[nc]ing a 9MM handgun and then King lifted up his shirt displaying the butt of a firearm[.]" *Id.*[3]

Finally, on April 16, 2021, two other SEPTA police officers[4] on surveillance observed the silver Dodge Charger "near [King's] residence." *Id.* The officers saw King exit his residence with an unknown female, enter the Charger, and drive away. The officers attempted to stop the vehicle at the

---

[3] Detective Butler also noted in the affidavit that "[t]he[ Instagram] photos were since deleted[,] along with others[,] but the video still remains on the page as of 4/3/21[,] and detectives were able to save clips of the other two photos before being deleted from the page. A preservation request of the page has also been made for the remaining content." *Id.* at 1.

[4] The given names of these officers, Detective McKenna and Sargent Sumpter, are not identified anywhere in the certified record. However, the affidavit of probable cause does include their badge numbers, #16 and #53, respectively. *Id.* at 2.

intersection of Broad and Diamond Streets. However, King "sped of[f] in order to fle[e] police." *Id.* The Charger was eventually located that evening, one block from SEPTA's Girard Avenue subway station; the vehicle was unoccupied. *Id.*

Detective Butler prepared an affidavit of probable cause, containing the aforementioned information, seeking a search warrant for King's silver Dodge Charger (temp. tag 3539-102), based on his belief that "the common use of vehicles to transport firearms, how often King is posted driving in a vehicle, and the fact that King is observed on the [C]harger with what appeared from training and experience to be a firearm underneath his shirt tucked in his pants . . . will reveal evidence [that he has been] violating [sections 6105 and 6106 of the Uniform Firearms Act.]" *Id.* Specifically, the search warrant application identified the following items to be searched for and seized from the Charger: "[f]irearms, ammunition, firearms accessories, and any[]thing else that could be considered evidence of the investigation." Application for Search Warrant, 4/16/21, at 1. On April 16, 2021, the warrant was issued by Naomi Williams, and a subsequent search of the Charger uncovered a loaded .380 caliber handgun and 35 flip-top containers containing crack cocaine.

King was charged with various drug offenses[5] and violations of the Uniform Firearms Act.[6] King filed a motion to suppress the evidence recovered

---

[5] 35 P.S. §§ 780-113-(a)(16), (a)(30), (a)(31).

[6] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 6106.1(a), 6108.

from the search of the silver Dodge Charger, claiming that the warrant was not supported by probable cause. Following the Commonwealth's argument, the Honorable Donna Woelpper granted the motion simply stating, "I disagree. I'm going to grant the defendant's motion to suppress and you have a 30-day appeal date." N.T. Motion to Suppress Proceeding, 6/17/22, at 13.[7] The

---

[7] We note that pursuant to Pa.R.Crim.P. 581:

> At the conclusion of [a suppression] hearing, **the judge shall enter on the record a statement of findings of fact and conclusions of law** as to whether the evidence was obtained in violation of the defendant's rights, or in the violation of these rules or any statute, and shall make an order granting or denying the relief sought.

Pa.R.Crim.P. 581(I) (emphasis added). We remind the trial judge that the Rule 581(I) mandate

> serves at least two salutary purposes. First, it permits the losing party to make a more intelligent assessment of whether or not to burden the appellate justice system with an appeal of the suppression ruling, particularly in cases of contested evidence. A defensible credibility-based decision may dissuade an appeal, whereas a purely legal ruling may make clear that further review is appropriate. Second, it is often the case (for example, where a waiver trial occurs) that the suppression judge is different from the trial judge yet, if there is a conviction, it will be the trial judge who will be responsible for preparation of the [Pa.R.A.P.] 1925[(a)] opinion for appeal. Thus, in cases where suppression is denied, a trial occurs, and a conviction ensues, and the defendant seeks to challenge the suppression ruling, the timely and specific ruling the suppression judge is required to enter under Rule 581(I) is essential to ensuring that the trial judge and the appellate courts will have a record upon which they can timely and meaningfully discharge their responsibilities.

*(Footnote Continued Next Page)*

Commonwealth filed a timely notice of appeal from that order and complied with the trial court's order for a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth presents the following issue for our consideration: "Did the trial court err by suppressing evidence seized from a car pursuant to a warrant, on the alleged ground that the facts in the warrant did not establish probable cause?" Commonwealth's Brief, at 4.

> When the Commonwealth appeals from a suppression order, this Court may consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the record as a whole, remains uncontradicted. In our review, we are not bound by the suppression court's conclusions of law, and we must determine if the suppression court properly applied the law to the facts. We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony.

**Commonwealth v. Hudson**, 92 A.3d 1235, 1241 (Pa. Super. 2014)

(citations omitted). In analyzing whether a warrant is supported by probable

---

**See Commonwealth v. Millner**, 888 A.2d 680, 688-89 (Pa. Super. 2005); **see also Commonwealth v. Simmons**, 440 A.2d 1228, 1230 (Pa. Super. 1982) (citing identical language from Rule 581(I)'s predecessor, Pa.R.Crim.P. 323(I)). While we do not remand this matter in spite of the suppression court's failure to comply with Rule 581(I), we note with disapproval the failure to comply with the rule, particularly where the Rule 1925(a) opinion, although thorough, was issued almost three- and one-half months after the suppression argument and ruling. **Cf. Commonwealth v. Fant**, 146 A.3d 1254, 1258 at n.4 (Pa. 2016) (where suppression court did not make on-the-record findings of fact and conclusions of law at conclusion of suppression hearing, but took matter under advisement overnight and "issued factual findings and conclusions of law in an opinion the very next day," mandate of Rule 581(I) fulfilled).

cause, judicial review is limited to the four corners of the supporting affidavit. *See* Pa.R.Crim.P. 203(B).

The Commonwealth argues that the affidavit used to secure the warrant to search King's car was supported by probable cause where "the facts in the affidavit . . . present[ed] a sufficient nexus between [King's] car and the gun [found in it]." Commonwealth's Brief, at 13. Specifically, the Commonwealth contends there was probable cause where: King, who was ineligible to possess a gun due to a prior conviction, had been surveilled by a SEPTA Transit police detective who observed King's social media posts of photos and videos where King was posing with a gun on his person and in front of or on a silver Dodge Charger (with a bulge under his shirt that looked like gun); the same detective saw the Charger parked near King's residence and observed King exit his residence, get into the Charger and drive away; and, where Philadelphia police officers tried to stop King while he was driving the Charger, but King fled from the police.

"A search warrant must be supported by probable cause." U.S. Const. amend. IV; Pa. Const. art. I, § 8. Probable cause exists "where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." ***Commonwealth v. Torres***, 177 A.3d 263, 265 (Pa. Super. 2017). In ***Commonwealth v. Gray***, 503 A.2d 291 (Pa. 1985), our Supreme Court adopted a "totality of the circumstances" test, originally set forth by the United

States Supreme Court in ***Illinois v. Gates***, 462 U.S. 213 (1983), as the appliable law under the Pennsylvania Constitution. The ***Gray*** Court concluded that this "approach is as workable here as in those others area of criminal procedure where a common-sense, practical approach is indicated." ***Gray***, ***supra*** at 485. Under such a test:

> the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner. Further, a reviewing court is not to conduct a *de novo* review of the issuing authority's probable cause determination, but is simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.

***Commonwealth v. Torres***, 764 A.2d 532, 537-38, 540 (Pa. 2001). Finally, "the affidavit of probable cause must establish a 'substantial nexus' between the [place to be searched] and [the] criminal activity or contraband sought to permit the search[.]" ***Commonwealth v. Mendoza***, 287 A.3d 457, 463 (Pa. Super. 2022) (citation omitted).

In her Rule 1925(a) opinion, Judge Woelpper concluded that suppression was proper where:

- the affidavit was based on images on social media and not first-hand observations;

- the four corners of the affidavit fail to establish a direct nexus between King's vehicle and the criminal activity/contraband where the only connection between the Charger and firearms is an undated photo of King posting in front of the car with a concealed bulge in pants;

- at most, police had probable cause to believe King committed a crime on the street; and

- the bald assertion that "vehicles are commonly used to transport firearms" does not give rise to probable cause.

***See*** Trial Court Opinion, 10/4/22, at 7-9.

Based on a "totality of the circumstances," we conclude that, considering all of the information contained within the affidavit of probable cause, there "was a fair probability that contraband or evidence of a crime would be found in [the Charger.]" ***Id.*** In ***Commonwealth v. Jones***, 121 A.3d 524 (Pa. Super. 2015), our Court stated:

> Probable cause does not involve certainties, but rather "the factual and practical considerations of everyday life on which reasonable and prudent men act." ***Commonwealth v. Wright***, [] 867 A.2d 1265, 1268 (Pa. Super. 2005) (quoting ***Commonwealth v. Romero***, [] 673 A.2d 374, 376 ([Pa. Super.] 1996)). It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause. ***Commonwealth v. Monaghan***, [] 441 A.2d 1318 ([Pa. Super.] 1982) (citation omitted). ***See also*** [] ***Gates***, 462 U.S. [at] 238 []; ***Commonwealth v. Lindblom***, [] 854 A.2d 604, 607 (Pa. Super. 2004) ([]probable cause exists when criminality is one reasonable inference, not necessarily even the most likely inference)[.]

***Id.*** at 528 n.5. Moreover, "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. Indeed, a magistrate's probable cause determination should receive deference from the

reviewing courts." ***Commonwealth v. Leed***, 186 A.3d 405, 413 (Pa. 2018) (citing ***Gates***, ***supra*** at 236).

Here, Detective Butler, an eleven-year veteran of SEPTA's transit police department and a three-year SEPTA detective, had been involved in hundreds of investigations and numerous arrests where he had obtained search warrants for narcotics and firearms. Moreover, Detective Butler had experience using social media platforms to assist in those investigations. Numerous social media posts on King's Instagram page showed King with a gun on his person. In addition to viewing King's social media posts, officers made first-hand observations of the silver Charger parked outside of King's residence, King driving the Charger, and, King fleeing from authorities as he drove off in the Charger when officers attempted to stop him. Finally, the Charger was ultimately recovered in the same area where those Instagram posts (both photos and videos) were taken.

Recently, in ***Commonwealth v. Adorno***, --- A.3d ---, 2023 PA Super 34 (Pa. Super. 2023), our Court reversed an order suppressing evidence uncovered following a search of the defendant's apartment pursuant to a warrant. In that case, the affiant, an officer from the Blakely Borough Police Department, testified that an officer from the Scranton Police Department had contacted him and told him he had observed a Facebook Live video of the defendant "dancing while holding a firearm [and] loading and unloading the firearm . . . in an apartment." ***Id.*** at *2. A third officer uncovered the defendant's address, a unit in an apartment building, and contacted the owner

of the building (309 Laurel Street) who, after watching the Facebook Live video of the defendant wielding a gun, told the officer that the defendant lived in the building and "that residence in the video was 309 Laurel Street." **Id.** After conducting a background check that revealed the defendant was ineligible to possess a firearm, the Blakely Borough officer prepared an application for a search warrant of the defendant's apartment. The evidentiary support for the warrant was based solely on social media posts (Facebook Live and Snapchat videos and other images). A search of the defendant's apartment uncovered the gun depicted in the video, as well as two other firearms and a large amount of prescription medication. **Id.** at *4. Defendant filed a suppression motion arguing that the search warrant lacked probable cause, the search was based on false information, and that the search exceeded the parameters set forth in the warrant. **Id.** at *1.

Following a hearing, the trial court suppressed the results of the search, pointing out that "the police had limited their investigation of the setting of a Facebook video to an interview of [the defendant's] landlord and stated that 'there is nothing more to determine that the alleged crimes took place' at [the defendant's] apartment . . . [and that] 'although probable cause may exist for the crime that took place' in the Facebook Live video, 'there is no substantial nexus to that crime taking place at the premise[s] to be searched, *i.e.*[, the defendant's] residence.'" **Id.** at *5-*6.

On appeal, our Court reversed the suppression court, concluding that the warrant application showed that experienced police officers had sufficient

facts to believe evidence of a crime would be in the defendant's apartment based upon social media posts that showed the defendant, who was ineligible to possess a firearm, with firearms and illegal narcotics inside what appeared to be his apartment. *Id.* at \*10. Moreover, our Court found that the landlord's statement that the kitchen in the Facebook Live video looked like defendant's kitchen was "sufficiently reliable" for affiant officers to rely upon to obtain the search warrant. *Id.* Finally, even though that location information was ultimately determined to be incorrect, because the officers did not deliberately or knowingly misstate any material fact in the affidavit, suppression was not warranted. *Id.* at \*12-\*13.

Here, like in *Adorno*, an experienced detective relied on multiple social media posts and videos to connect King's possession of a gun with the Charger. Moreover, in the instant case the police also relied upon first-hand observations to support the nexus between the crime and the place to be searched. Under these facts, we conclude that, based on a totality of the circumstances, there was a "fair probability" that contraband or evidence of a crime would be found in the Charger. *Jones*, *supra*. Detective Butler, an experienced SEPTA detective, had sufficient facts to believe that contraband (drugs) or evidence of a crime (gun) would be found in the silver Charger where: Detective Butler knew that King was ineligible to possess a gun; King posted photos of himself holding a gun or with a gun on his person; King posted a photo of himself posing in front of the Charger with a bulge in his waistband that appeared to be a gun; King fled from police in the Charger

when officers attempted to pull him over; and the Charger was ultimately recovered blocks from the location where King had posted the videos and photos of himself holding a gun. *See Commonwealth v. Rapak*, 138 A.3d 666, 671 (Pa. Super. 2016) ("probable cause is based on a finding of the probability, not a *prima facie* showing[,] of criminal activity"); *see also Mendoza*, *supra* at 467 (where defendant provided false information to lead officers away from correct address where drugs stashed, it did "not 'take a leap of faith' to conclude he was attempting to distance himself from his home where he stored the contraband").

Additionally, here, the warrant was supported by more than an officer's assertion that in his "professional experience" guns are often found in cars. *Cf. Commonwealth v. Nicholson*, 262 A.3d 1276 (Pa. Super. 2021) (suppression proper where officer's professional knowledge and experience that drug dealers often keep drugs in home, without specific connection to defendant's home; no nexus established for purposes of issuing search warrant). Moreover, unlike many probable cause/search warrant cases that rely on confidential informants, here, we have experienced detectives and officers who, in addition to viewing social media posts, observed, first-hand, King's evasive and suspicious activity that tied him and the gun to the Charger. *See Mendoza*, *supra* at 466-67 (based on officer's training and experience, detective opined in "affidavit that [defendant] provided [the false information] in an attempt to lead officers away from [his correct home address]" and that this "demonstrate[d the defendant's] consciousness of guilt).

Accordingly, we find that, given all the circumstances set forth in the affidavit, viewed "in a commonsense manner," **Torres**, **supra**, a reasonable person would conclude that there was probable cause to search the Dodge Charger for evidence of a crime. Thus, we reverse the trial court's order granting suppression of the evidence found in the Charger where the court's legal conclusions were in error. **Torres**, **supra** (reviewing court not to conduct *de novo* review of magistrate's probable cause determination).

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2023