2022 PA Super 215

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANGEL MARTIN MENDOZA | : | No. 260 MDA 2022 |

Appeal from the Order Entered January 10, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004571-2020

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                **FILED:  DECEMBER 16, 2022**

The Commonwealth appeals from the January 10, 2022, order entered in the Court of Common Pleas of York County, which granted the omnibus pre-trial *nunc pro tunc* suppression motion filed by Appellee Angel Martin Mendoza ("Mendoza").[1]   After a careful review, we reverse the order granting the suppression motion, and we remand for further proceedings consistent with this decision.

The relevant facts and procedural history are as follows: The Commonwealth filed an Information against Mendoza charging him with

_____

[*] Former Justice specially assigned to the Superior Court.

[1] In its notice of appeal, the Commonwealth certified it took this interlocutory appeal pursuant to Pa.R.A.P. 311(d), and the suppression court's ruling terminates or substantially handicaps its prosecution. ***See Commonwealth v. Holston***, 211 A.3d 1264, 1268 (Pa.Super. 2019) (*en banc*).

possession of firearm prohibited, person not to possess/use firearms-delinquent, possession with the intent to manufacture or deliver a controlled substance, and possession of drug paraphernalia[2] following a search of Mendoza's residence on August 24, 2020.

On November 30, 2021, Mendoza filed a counseled omnibus pre-trial *nunc pro tunc* suppression motion[3] wherein he averred he was entitled to suppression of the evidence seized from his residence pursuant to this Court's opinion in **Commonwealth v. Nicholson**, 262 A.3d 1276 (Pa.Super. 2021). Specifically, Mendoza noted that, on August 24, 2020, Detective Cody Myers of the York County Detective Bureau applied for and was granted a search warrant for the property located at --0 W. Market Street, 2nd floor, York, PA. However, Mendoza averred "the search warranted lacked the requisite probable cause necessary for the Magisterial District [Justice] to issue said search warrant." Mendoza's *Nunc Pro Tunc* Suppression Motion, filed 11/30/21, at 2. In this vein, he alleged "the Commonwealth is incapable of

---

[2] 18 Pa.C.S.A. § 6105(a)(1), 18 Pa.C.S.A. § 6105(c)(7), 35 P.S. § 780-113(a)(30), and 35 P.S. § 780-113(a)(32), respectively.

[3] Pennsylvania Rule of Criminal Procedure 579 states that an *omnibus* pre-trial motion "shall be filed and served within 30 days after arraignment, unless opportunity therefor did not exist, or the defendant or defense attorney, or the attorney for the Commonwealth, was not aware of the grounds for the motion, or unless the time for filing has been extended by the court for cause shown." Pa.R.Crim.P. 579(a). Here, Mendoza did not file his suppression motion within thirty days after his arraignment; however, he properly sought permission to file his suppression motion *nunc pro tunc*.

establishing a substantial nexus between [Mendoza's] home and criminal activity or contraband sought to permit the search [of] his residence as required by [**Nicholson**, **supra**]." **Id.** at 3.

On December 20, 2021, the suppression court granted Mendoza permission to file the suppression motion *nunc pro tunc* and scheduled a suppression hearing for January 10, 2022. At the hearing, the parties agreed the suppression issue should be examined within the four-corners of the search warrant and supporting affidavit of probable cause. The Commonwealth offered into evidence Detective Myers' application for the search warrant in which he identified the premises to be searched as --0 W. Market Street, 2nd floor, York City, PA, and the following items to be seized:

> Marijuana, Schedule 1 controlled substance, along with any other drugs or drug paraphernalia, packaging, materials, scales, business records, official funds, firearms, identification and other documentary and physical items relating to the possession, distribution[.]

Application for Search Warrant, dated 8/24/20.

In the supporting affidavit of probable cause, Detective Myers indicated the following (verbatim):

> The affiant, Detective Cody Myers, has been a member of the York County District Attorney's Office since July of 2019 and is currently assigned to the York County Drug Task Force. Prior to my employment with the York County District Attorney's Office, I was a member of the York County Sheriff's Office assigned to the Criminal Response Unit for 8 years. I was assigned to the York County Drug Task Force from 2016 until beginning employment with the District Attorney's Office. During that time, I have conducted and assisted with a variety of drug investigations which have led to the arrests and numerous convictions for violations of

- 3 -

the Controlled Substance, Drug Device, and Cosmetic Act of 1972, as well as U.S. currency seizures involving the proceeds of drug vending operations and criminal activity. I have acted as the affiant of and been present for the service of numerous search warrants resulting in the seizure of controlled substances, related drug paraphernalia, firearms, U.S. currency, stolen property, and documentation referencing the sale of illicit narcotics. I have been involved in numerous arrests of individuals for narcotic offenses to include: marijuana, synthetic marijuana, cocaine, heroin, fentanyl, methamphetamine, MDMA/Ecstasy, and several other substances listed in the Controlled Substance, Drug Device, and Cosmetic Act of 1972.

Additionally, while working drug investigations in central Pennsylvania, I have had the opportunity to interview dozens of informants and sources of information. These interviews concerned the value of controlled substances, the appearance of controlled substances, methods of sale, methods of packaging, methods of hiding, secreting, and transporting controlled substances as well as identifying persons involved in controlled substance distribution.

Within the last three weeks, I met with a reliable confidential informant who stated they can purchase marijuana from Angel Martin Mendoza[.] The CI was able to identify Mendoza's residence as --0 W. Market Street, York City, York County, Pennsylvania. The CI stated you have to enter Mendoza's apartment from a staircase to the rear of --0 W. Market Street which leads to a second-floor door. The CI knows this to be Mendoza's residence from previously being inside with Mendoza. The CI stated they know Mendoza is carrying a handgun. The CI stated Mendoza has showed them his handgun on several occasions.

Mendoza lists his current address with PennDot as --0 W. Market Street, 2nd floor, York, PA[.] The York City Police have responded to emergency calls for Mendoza at this address as recent as April of 2020. In 2017, Mendoza was arrested at --0 W. Market Street, 2nd floor, for an outstanding warrant.

Within the past two weeks, a reliable confidential informant at my direction made arrangements with Mendoza for the purpose of purchasing a quantity of marijuana. Police officers observed Mendoza leave the area of the rear staircase to --0 W. Market Street and enter a vehicle. This staircase leads to the second-floor apartment. Mendoza was surveilled from --0 W. Market Street to a predetermined location within York County to deliver a

quantity of marijuana, in exchange for previously recorded official funds. This marijuana was subsequently seized by police.

Within the last week I conducted physical surveillance where I viewed Mendoza and the vehicle used in the aforementioned delivery of marijuana to the rear of --0 W. Market Street, York City, York County.

On 8/24/2020, a reliable confidential informant had prior arrangements with Mendoza for the purpose of purchasing a quantity of marijuana. At the time of the scheduled purchase, Police Officers observed Mendoza exit the staircase to the rear of −-0 W. Market Street and enter a vehicle. This staircase only goes to one door on the second floor of the residence. The York City Police subsequently stopped Mendoza for a vehicle code violation. They developed probable cause to search the vehicle. A quantity of marijuana and a handgun were located inside the vehicle. Mendoza was taken into custody for the marijuana and handgun.

While interviewing Mendoza, he stated he currently resides at -−2 W. Market Street, 1st floor, York City, York County. I believe this to be false information that Mendoza provided in an attempt to lead officers away from his correct address.

The CI should be considered past proven reliable because the information they have provided led to the arrests of three people for felony drug crimes. The outcome of these cases is still pending. The CI's information has led to the seizure of marijuana, cocaine, and quantities of U.S. currency. The information the CI is providing continues to be accurate.

Based on this information, I believe that a marijuana vending operation is being conducted by Angel Mendoza at −-0 W. Market Street, 2nd floor, York City, York County. I respectfully request a search warrant be issued to search [this address], as well as any curtilage associated with the property for additional evidence, including additional amounts of marijuana; cash previously used to purchase marijuana (official funds); materials and items used to package narcotics, such as plastic bags and scales; [and] records or other documentation of past narcotics transactions. I am also requesting to search all persons during the service of the search warrant[.] I am requesting all persons be searched based on this Detectives [*sic*] 9 years of experience that narcotics can be easily concealed on a person and later destroyed.

Affidavit of Probable Cause, dated 8/24/20, at 1-4.[4]

Following the hearing, by order entered on January 10, 2022, the suppression court granted Mendoza's omnibus pre-trial *nunc pro tunc* suppression motion. Specifically, the suppression court indicated the following:

> The best cite we have is [**Nicholson**, **supra**,] published on September 27, 2021.
>
> **Nicholson** seems to stand for the proposition that there must be a substantial nexus between the suspect's home and the criminal activity or contraband sought to be the subject of the search warrant.
>
> In the case presently, the only distinguishing factor that we've been able to ascertain between the two cases is that the Defendant and Mr. Mendoza did not make any stops between his residence and the first controlled buy or before being stopped by the police on his way to the second controlled buy.
>
> However, we are not satisfied that is enough of a distinction to overrule the holding of **Nicholson**. While we think that this holding has a very chilling effect on prosecution of drug offenses, it is currently the law in Pennsylvania, and therefore, we will grant the motion to suppress.

Suppression Court Order, filed 1/10/22.

On February 8, 2022, the Commonwealth filed the instant appeal, and all Pa.R.A.P. 1925 requirements have been met.

---

[4] The magisterial district justice issued the search warrant for ---0 W. Market Street, 2nd floor, in York, PA, on August 24, 2020, and the police executed the search warrant that same date. Inside the residence, the police discovered marijuana, digital scales, a loaded handgun, a loaded thirty round magazine, and over $4,000 in cash. Additionally, the residence contained several items containing the name of Angel Mendoza.

On appeal, the Commonwealth contends the suppression court erred in granting Mendoza's omnibus pre-trial *nunc pro tunc* suppression motion. Specifically, the Commonwealth argues the search warrant at issue was supported by probable cause to search Mendoza's residence since the text of the supporting affidavit establishes a clear nexus between Mendoza's residence and his criminal activity as is required by existing case law.

Preliminarily, with respect to an appeal from a suppression court ruling:

> Our review is limited to determining whether the record supports the findings of fact of the suppression court and whether the legal conclusions drawn from those findings are correct. We are bound by the factual findings of the suppression court, which are supported by the record, but we are not bound by the suppression court's legal rulings, which we review *de novo.*

*Commonwealth v. James*, 620 Pa. 465, 69 A.3d 180, 186 (2013) (quotations, citations, and corrections omitted).

> It is well-established that a magistrate may not consider any evidence outside of the affidavit to determine whether probable cause exists to support a search warrant. *See* Pa.R.Crim.P. 203(B). This Court has held "[b]efore an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search..." and such information "must be viewed in a common sense, nontechnical, ungrudging and positive manner." *Commonwealth v. Baker*, 532 Pa. 121, 615 A.2d 23, 25 (1992). The United States Supreme Court has stated:
>
> > The task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*** 

> *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76
> L.Ed.2d 527 (1983)[.] Furthermore, probable cause is based on a
> probability, not a *prima facie* case of criminal activity[.]

*Commonwealth v. Housman*, 604 Pa. 596, 986 A.2d 822, 843 (2009)

(citation omitted).

Further, as this Court has recognized, with respect to a court that is

reviewing an issuing authority's probable cause determination:

> The reviewing court is not to conduct a *de novo* review of
> the issuing authority's probable cause determination, but is simply
> to determine whether or not there is substantial evidence in the
> record supporting the decision to issue a warrant....In so doing,
> the reviewing court must accord deference to the issuing
> authority's probable cause determination, and must view the
> information offered to establish probable cause in a common-
> sense, non-technical manner.

[*Jones*, *supra*,] 988 A.2d [at] 655 (internal citations, quotations,
and corrections omitted).

> Thus, although "[r]easonable minds frequently may differ
> on the question whether a particular affidavit establishes probable
> cause," the deference afforded a magistrate judge ensures that,
> "[i]f a substantial basis exists to support the magistrate's probable
> cause finding, [the trial court] must uphold that finding even if a
> different magistrate judge might have found the affidavit
> insufficient to support a warrant."

*Commonwealth v. Gagliardi*, 128 A.3d 790, 794-95 (Pa.Super. 2015)

(footnote, quotation, and citations omitted).[5]

---

[5] We note that, in the case at bar, the factual findings are not in dispute.
Rather, the suppression court was tasked with making the legal determination
as to whether—when looking at the four corners of the affidavit—"a substantial
basis exists to support the magistrate's probable cause finding." *Jones*,
*(Footnote Continued Next Page)*

Initially, we begin with an examination of this Court's rather recent opinion in *Nicholson*, *supra*, upon which the suppression court relied in granting Mendoza's suppression motion. In *Nicholson*, this Court examined existing case law and relevantly held as follows:

> The issuing authority must determine whether, given the totality of the circumstances presented, there is a fair probability that evidence of crime or contraband will be found in a particular location.
>
> However, "probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home." *Commonwealth v. Wallace*, 615 Pa. 395, 42 A.2d 1040, 1049-50 (2012) (citing *Commonwealth v. Heyward*, 248 Pa.Super. 465, 375 A.2d 191, 192 (1977) (*en banc*)); *see also Commonwealth v. Kline*, 234 Pa.Super. 12, 335 A.2d 361, 364 (1975) (*en banc*). The affidavit of probable cause must establish a "substantial nexus" between the suspect's home and criminal activity or contraband sought to permit the search of the home. *Id.* The task of the reviewing court is to ensure that the issuing authority had a substantial basis to conclude that probable cause existed. *Id.*
>
> These principles were applied in [*Commonwealth v.*] *Way*, [342 Pa.Super. 341, 492 A.2d 1151 (1985)], a factually analogous case discussed by the suppression court in [*Nicholson*].
>
> In *Way*, an undercover police officer asked two suspects to procure methamphetamine for him. The two suspects met with the defendant, who provided the drugs. After the transaction, a surveillance officer followed the defendant's vehicle to another location, which turned out to be the defendant's home. The affidavit in support of the warrant stated that police followed the defendant to his home after the transaction.

---

*supra*, 988 A.2d at 655. Since "we are not bound by the suppression court's legal rulings," our standard of review of the suppression court's ruling is *de novo. Id.* Thus, as was true with the suppression court, we are required to "determine whether or not there is substantial evidence in the record supporting the [issuing authority's] decision to issue a warrant." *Id.*

On these facts, the affidavit was held to be insufficient to support a probable cause determination. We explained that

> [p]robable cause to believe that a man has committed a crime does not necessarily give rise to probable cause to search his home….[A]n allegation based on an assumption or supposition not supported by the facts is insufficient to support (an inference of) criminal activity in the premises, in spite of the fact that there are plenty of allegations alleged to relate to criminal activity of the individual who is alleged to have lived in the premises.

*Id.* at 1154 (quoting ***Commonwealth v. Kline***, 234 Pa.Super. 12, 335 A.2d 361, 363 (1975)). Rather, the totality of the circumstances demonstrated that the defendant's base of operations for his drug dealing was his vehicle and not his home. ***Id.***

In this case, while Nicholson returned to his residence after each drug sale, that does not alone support a probable cause determination justifying a search of his home. As to the first controlled buy, the police did not observe where Nicholson came from on his way to the location of that transaction. This made it just as likely that he picked up the contraband from somewhere other than his own residence. It was also equally possible that Nicholson kept the drugs in his vehicle, where the sale took place.

Similarly, just prior to the second transaction, police observed Nicholson leaving his home and making two stops—one at the post office and one at another identified location—before he arrived at the location of that second drug buy. This again supports the notion that Nicholson retrieved the drugs from a location other than his home or on his way to the sale. It does not logically follow that Nicholson had the drugs stashed at his home just because he went there after each sale was completed. As in ***Way***, the police, at most, had probable cause to believe the drugs were kept in Nicholson's car, which he used as his main base of operations.

The Commonwealth has argued that a finding of probable cause was supported by the totality of the circumstances because the police observed facts creating a substantial nexus between the drug buys and Nicholson's home. It attempts to analogize the present case to the scenarios in ***Commonwealth v. Gray***, 509 Pa. 476, 503 A.2d 921 (1985), and ***Commonwealth v. Clark***, 611 Pa. 601, 28 A.3d 1284 (2011), where it was held that under

the totality of the circumstances, police had probable cause to search a drug dealer's home.

However, both of those cases are distinguishable because in each, a reliable confidential informant had specifically told police that drugs would be found in the defendant's home. *See Clark*, 28 A.3d at 1285 (CI informed police that defendant "packages and distributes cocaine" from his residence); [*Gray*, 503 A.2d] at 922 (several reliable CIs told police that defendant and his girlfriend "had approximately twenty pounds of marijuana at their residence."). Police were also able to corroborate the tips in both cases because the defendant drove directly from his home to the location of the controlled buy.

Conversely, in the present case [of *Nicholson*], the CI never reported to police that Nicholson was selling drugs from his home. In Officer Kelch's affidavit, he recounted being told by the CI only that Nicholson "is selling crack cocaine in various areas throughout New Brighton."

The police later observed that both controlled buys took place in Nicholson's car. Unlike in *Gray* and *Clark*, the police did not corroborate a tip as to where a stash was being kept because no such tip was given. Additionally, as already noted, the police [in *Nicholson*] did not observe Nicholson proceeding directly from his residence to the locations of the drug buys. The suppression court correctly applied *Way* in ruling that the facts presented to the Magisterial District Justice were insufficient to justify a probable cause determination, as a substantial nexus between the drug buys and Nicholson's residence was never established.

*Nicholson*, 262 A.3d at 1280-81(bold and citations omitted).

After careful consideration, we agree with the Commonwealth that the

facts of *Nicholson* are distinguishable from the case *sub judice*. Here, unlike in

*Nicholson*, the CI, who had provided accurate information of criminal activity

in the past to Detective Myers,[6] informed the detective that he/she had been inside of Mendoza's residence on the second floor of -−0 W. Market Street, and the sole ingress and egress to the residence is a rear staircase. The CI informed the detective he/she had seen Mendoza's handgun several times and could purchase marijuana from him.

Moreover, in the case *sub judice*, two arrangements were made for the CI to purchase marijuana from Mendoza. With regard to the first arrangement, unlike in **Nicholson**, the police here conducted surveillance of Mendoza's residence and observed him exit the rear staircase of the building, enter his vehicle, and travel directly to a predetermined location where he delivered marijuana to the CI.

Further, with regard to the second arrangement, the police here conducted surveillance of Mendoza's residence, observed him exit the rear staircase of the building at the time of the scheduled purchase, and properly stopped his vehicle for a vehicle code violation before the controlled buy could be completed. The police discovered marijuana and a handgun inside of the vehicle. Unlike in

---

[6] We note the magisterial district justice found the CI to be reliable, and we discern no error in this regard. **See Clark**, **supra** (holding a determination of probable cause based upon information received from a CI depends upon the CI's reliability and basis of knowledge viewed in a common sense manner); **Commonwealth v. Dukeman**, 917 A.2d 338, 342 (Pa.Super. 2007) (holding the issuing authority determines reliability of informant's information from the facts supplied by the police official).

***Nicholson***, there is no indication Mendoza stopped anywhere before the police stopped his vehicle.

We find the facts in the case *sub judice* to be more akin to those in ***Clark***, *supra*, wherein our Supreme Court held there was a sufficient nexus between the defendant's residence and his drug activities to support a determination of probable cause to search the residence.

In ***Clark***, our Supreme Court recounted:

> The affiant in [***Clark***] was Philadelphia Police Officer James Kidd, a fourteen-year narcotics bureau veteran who had been involved in over 3000 narcotics arrests by the time of the instant investigation. The affidavit of probable cause stated that on September 8, 2004, a "reliable confidential informant" had informed Officer Kidd that a white male, approximately 6'–6'2" in height, weighing approximately 170–195 lbs., known as "Steve," packages and distributes cocaine from 4242 Salmon Street in Philadelphia, and makes deliveries of cocaine in a white Pontiac Grand Am with a black roof, Pennsylvania license number FRG-5450. The affidavit further stated that the police conducted a controlled drug buy on September 9, 2004, as follows: The police observed a white male matching the description of "Steve" depart 4242 Salmon Street, directly enter a white Pontiac Grand Am with a black roof and license number FRG–5450, and drive to the site of a pre-arranged controlled buy. The police observed as the CI purchased cocaine in two green plastic baggies from the white male with $40[.00] pre-recorded buy money. After the transaction, the police followed the white male back to 4242 Salmon Street, where they saw him exit the Pontiac and directly enter the residence. The police verified that the Pontiac was registered to "Steve Clark" with an address of 4242 Salmon Street.
>
> Based on the above recitation, a Municipal Court Judge issued a search warrant for 4242 Salmon Street and the police executed a search of the residence on September 10, 2004. The police seized $1775[.00] in United States currency, cocaine, cocaine "cutting" agents, packaging paraphernalia, a loaded .25 caliber handgun, and mail addressed to "Steve Clark." They

- 13 -

arrested Appellee, Steven Clark, who subsequently filed a motion to suppress the evidence seized from the residence.

*Clark*, *supra*, 28 A.3d at 1285–86.

Ultimately, our Supreme Court in *Clark* found:

The totality of the circumstances here included the fact that the police corroborated significant details of the informant's tip by conducting and observing, the day before they applied for the search warrant, a controlled buy of narcotics that dovetailed precisely with the information the CI had provided. Indeed, the only portion of the CI's information that the police had not verified was where the cocaine was stashed. Although the observed facts pointed to 4242 Salmon Street as the stash house, the lower courts here erroneously determined that probable cause to search that residence was lacking, in part, because the CI had not stated that he had previously been inside that residence.

*Clark*, *supra*, 28 A.3d at 1289. The *Clark* Court concluded "there was a sufficient connection between the residence and the transaction to corroborate the CI's information that drugs were stored in the residence, and to support a determination of probable cause to search the residence." *Id.* at 1291.

In the case *sub judice*, giving great deference to the magisterial district justice in finding probable cause to support the issuance of a search warrant, we conclude there is substantial evidence in the record supporting the issuance of the warrant. *See Jones*, *supra*. Here, there is no dispute the CI was reliable. Moreover, based upon all of the information provided, similar to in *Clark*, the affidavit of probable cause detailed the suspect's comings and goings from his residence in relation to the pre-arranged buys, thus demonstrating a fair probability that the proceeds of crime would be found in the location for which the warrant was sought.

Additionally, we note that, in the instant case, the affidavit sets forth that, when the police questioned Mendoza following the vehicle stop, Mendoza provided false information as to his address. Based on his training and experience, Detective Myers opined in the affidavit that "Mendoza provided [the false information] in an attempt to lead officers away from his correct address." Affidavit of Probable Cause, filed 8/24/20, at 4.

We conclude that, under the totality of the circumstances, Mendoza's lie demonstrates his consciousness of guilt, and it does not "take a leap of faith" to conclude he was attempting to distance himself from his home where he stored contraband. *See Commonwealth v. Chapman*, 635 Pa. 273, 136 A.3d 126 (2016) (holding that lies to police during an investigation demonstrates consciousness of guilt).

Since the affidavit of probable cause set forth a "substantial nexus" between Mendoza's residence and criminal activities or contraband, we conclude the magisterial district justice had a "substantial basis" for concluding that probable cause existed to search Mendoza's residence. *See Gagliardi*, *supra*. Accordingly, the suppression court erred in granting Mendoza's omnibus pre-trial *nunc pro tunc* suppression motion.

For all of the foregoing reasons, we reverse the suppression court's order and remand for further proceedings consistent with this decision.

Order reversed and case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2022