J-A17018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
BRENDA YAMILET PALACIOS : No. 2047 EDA 2022

Appeal from the Order Entered July 21, 2022
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0003267-2021

BEFORE:   KING, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:                **FILED NOVEMBER 14, 2023**

The Commonwealth appeals from the order granting the suppression motion of Brenda Yamilet Palacios ("Yamilet Palacios").  Following our careful review, we affirm.

The relevant factual and procedural history of this case is as follows: The Commonwealth charged Yamilet Palacios with possession with intent to deliver a controlled substance, simple possession, and possession of paraphernalia.[1]  **See** Information, 11/12/21.  The charges resulted from a search warrant issued pursuant to a police investigation involving a shooting/homicide.  Yamilet Palacios moved for suppression, arguing the search warrant lacked probable cause and failed to establish the requisite

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 35 P.S. § 780-113(a)(30), (a)(16), (a)(32).

nexus between the evidence sought and her home. ***See***, ***e.g.***, Brief in Support of Motion to Suppress, 6/9/22, unnumbered at *2. The trial court held a suppression hearing, and the court admitted the search warrant into evidence. ***See*** N.T., 4/26/22, at 6.

The affidavit of probable cause for the warrant specified the following: On August 21, 2021, at 8:23 p.m., Allentown Police Department officers were dispatched to 12th and Linden Streets for reports of a shooting. ***See*** Affidavit of Probable Cause, 8/25/21, at ¶ 2. On arrival, officers found a male lying on the sidewalk, next to a yellow ATV, suffering a gunshot wound to the right side of his head. ***See id***. at ¶ 3. The victim was identified as Roniel Orlando Santos-Rivera ("Santos-Rivera"). The affiant, Detective Yamil Castillo, obtained surveillance footage from several cameras in the vicinity of the shooting. ***See id***. at ¶ 5.

Surveillance footage revealed the following: Santos-Rivera arrived at a Pacemart, located at 640 N. 7th Street, riding the yellow ATV, at about 7:56 p.m. ***See id***. at ¶ 6. Several others arrived around that time, including a white BMW with a damaged front bumper. ***See id***. at ¶¶ 7, 18. A female was driving the BMW, a black male was in the front passenger seat, and there was a passenger in the back. ***See id***. Both the driver and front passenger of the BMW exited the vehicle at the Pacemart. ***See id***. at ¶ 8. Detective Samson Wega was able to identify the front passenger as Taijon Edwards ("Edwards")

and the driver as his girlfriend, Yamilet Palacios, based on the detective's prior unrelated contact with Edwards. *See id*. at ¶ 9.[2] Detective Castillo observed that the surveillance footage showed Santos-Rivera (on the ATV) and the BMW leave the Pacemart and travel south on 7th Street. *See id*. at ¶ 10.

Surveillance footage also depicted the ATV and BMW travelling south to Linden Street, then west on Linden Street, after which Detective Castillo observed someone lean outside of the front passenger window of the BMW in the 1000 block of Linden Street. *See id*. at ¶ 14. Police later located a shell casing at the 1000 block of Linden Street. *See id*. at ¶ 16. Four spent shell casings were later found in the 1100 block of Linden Street, consistent with the path of travel of the BMW, as seen on surveillance, and which matched the casing from the 1000 block of Linden Street. *See id*. at ¶¶ 15-16. The surveillance footage showed Santos-Rivera continuing to travel down the 1000 and 1100 blocks of Linden Street before crashing the ATV into a residence at the corner of 12th and Linden Streets. *See id*. at ¶ 17. Santos-Rivera, when found, was suffering from a gunshot wound to the right side of his head. *See id*. at ¶ 3.

As part of their investigation, officers obtained the license plate number for the BMW using a license plate reader and were also able to identify the

---

[2] Detective Wega also, through his own investigation, learned that the person the BMW was registered to, Shaquille Alexander Robinson, had made phone calls and money deposits to Edwards while Edwards was incarcerated. *See* Affidavit of Probable Cause, 8/25/21, at ¶¶ 11-12.

BMW by the damage to its front bumper. *See id*. at ¶¶ 11, 18. Officers observed the vehicle parked, around 6:00 a.m. the following morning, at the 900 block of Gordon Street, which is around the corner from the address where Yamilet Palacio and Edwards lived, on North 9th Street. *See id*. at ¶¶ 18-20.

Based on the foregoing investigation, Detective Castillo applied for a search warrant three days later for Yamilet Palacios and Edwards's residence to search for evidence related to Santos-Rivera's shooting. *See id*. at ¶ 23. Police executed the warrant, after which Yamilet Palacios was charged with the various drug offenses.

Upon consideration of Yamilet Palacios's suppression motion and the hearing, the court determined that the search warrant lacked probable cause and granted suppression. *See* Order, 7/21/22. The Commonwealth timely appealed and certified that the suppression order would terminate or substantially handicap the prosecution. *See* Notice of Appeal, 8/12/22 (citing Pa.R.A.P. 311(d)). Both the Commonwealth and the suppression court complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issue for our review:

> Did the lower court err when it granted [Yamilet Palacios's] [m]otion to [s]uppress where there was a substantial basis for the issuing authority to determine that probable cause existed to issue a search warrant for [Yamilet Palacios's] North 9th Street [address ?]

Commonwealth's Brief at 4.

Our standard of review for an order granting a suppression motion is as follows:

> Our review is limited to determining whether the record supports the findings of fact of the suppression court and whether the legal conclusions drawn from those findings are correct. We are bound by the factual findings of the suppression court, which are supported by the record, but we are not bound by the suppression court's legal rulings, which we review *de novo.*

***Commonwealth v. Mendoza***, 287 A.3d 457, 462 (Pa. Super. 2022) (internal citation omitted).

The Commonwealth maintains the suppression court erred in concluding the search warrant lacked probable cause. Regarding the probable cause requirement for search warrants, our Supreme Court has explained:

> The Fourth Amendment to the United States Constitution commands that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." . . . Similarly, Article I, Section 8 of the Pennsylvania Constitution provides that "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."

***Commonwealth v. Jacoby***, 170 A.3d 1065, 1081 (Pa. 2017).

The following law applies to the issuing authority's determination of whether an affidavit contains sufficient probable cause:

> It is well-established that a magistrate may not consider any evidence outside of the affidavit to determine whether probable

- 5 -

cause exists to support a search warrant. [B]efore an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. . .. [S]uch information must be viewed in a common sense, nontechnical, ungrudging and positive manner . . ..

The task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Mendoza*, 287 A.3d at 462 (internal citations, quotations, and brackets omitted).

A reviewing court is not to conduct a *de novo* review of the issuing authority's probable cause determination; instead:

[It] is simply to determine whether or not there is substantial evidence in the record supporting the decision to issue a warrant. . .. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

Thus, although reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, the deference afforded a magistrate judge ensures that, if a substantial basis exists to support the magistrate's probable cause finding, the [suppression] court must uphold that finding even if a different magistrate judge might have found the affidavit insufficient to support a warrant.

*Id*. at 463 (internal citations, quotations, and brackets omitted; some ellipses in original).

An affidavit of probable cause must "establish a 'substantial nexus' between the suspect's home and the criminal activity or contraband sought to

- 6 -

permit the search of the home." ***Commonwealth v. Nicholson***, 262 A.3d 1276, 1280 (Pa. Super. 2021) (internal citation omitted). Probable cause "to believe that [an individual] has committed a crime does not necessarily give rise to probable cause to search his [or her] home." ***Id***. Indeed, the "affidavit of probable cause must establish a 'substantial nexus' between the suspect's home and the criminal activity . . . to permit the search of the home. The task of the reviewing court is to ensure that the issuing authority had a substantial basis to conclude that probable cause existed." ***Id***. (internal citations omitted). In determining whether there is a "substantial nexus" between a suspect's home and the criminal activity at issue, our Supreme Court has prohibited the use of "categorical assumptions" about where suspects are likely to store contraband; as our High Court has explained:

> There is nothing even to suggest that similar people within the same general category would respond to a set of circumstances in the same way. ***Probable cause to search [a suspect's] home must be evaluated based upon the circumstances of his case, his behavior, and any nexus to the location to be searched, but not upon categorical assumptions.*** Our Constitutions prohibit such categorical conclusions, as well as those searches that are based upon such conclusions.

***Jacoby***, 170 A.3d at 1085 (emphasis added). Instead, "there must be something in the affidavit that links the place to be searched directly to the criminal activity." ***Nicholson***, 262 A.3d at 1282.

Here, the Commonwealth maintains the suppression court erred in granting Yamilet Palacios's suppression motion. Specifically, the Commonwealth argues "the lower court failed to give proper deference to the

issuing authority's . . . probable cause determination, myopically re-evaluated the averments in the search warrant, and held the Commonwealth to a standard higher than whether or not there was a 'fair probability[7] [evidence from] the shooting a mere three days prior" would be found in the residence. Commonwealth's Brief at 10. The Commonwealth asserts that "the evidence sought here – guns, clothing, and cell phones – are not by their nature easily exchanged, sold, consumed, or otherwise disposed of." *Id*. at 12. The Commonwealth also notes that Yamilet Palacios would have been unaware that surveillance footage captured her or that she was a suspect, which decreases the likelihood that she would have disposed of the contraband. *See id*. at 14-15.

The suppression court considered the Commonwealth's argument and determined the Commonwealth was due no relief:

> Initially, the Commonwealth has failed to establish a "substantial nexus" between the home of [Yamilet Palacios] and the criminal activity. . .. [*See*] *Nicholson*, 262 A.3d [at] 1280[; *see also*] *Jacoby*, 170 A.3d [at] 1084-85 [] (probable cause to search a residence for a murder weapon does not exist in the absence of a nexus to the residence).

> This is not an investigation in which "hot pursuit" led the police to [Yamilet Palacios's] residence. No evidence exists that [Yamilet Palacios] or Edwards were even seen at the 9th Street apartment after the shooting. The best that the affidavit provides is that the BM[W] . . ., which was not registered to either [Yamilet Palacios] or Edwards, was seen "in a close proximity (around the corner)" to the premises to be searched the next morning. Additionally, the search warrant was not executed until August 25, 2021, almost four . . . days after the shooting. . ..

This is not to say that the information in the possession of the police would generally be considered stale. However, in order to support a finding of probable cause, it must be shown that criminal activity at some prior time continued up to or about the time the search warrant was issued. . ... Here, the shooting was an isolated incident "pinpointed in time," and not a continuing course of events. . ..

＊ ＊ ＊ ＊

. . . In this case, if categorical assumptions are rejected, *i.e.*, how long someone would keep a firearm in their home after participating in a shooting, then the factor that presents itself as the Commonwealth's biggest obstacle to establishing probable cause is the nexus to the place to be searched. There must be something in the affidavit that links [Yamilet Palacios's] residence directly to the criminal activity or contraband. More is required than merely asserting because [Yamilet Palacios] resides with . . . Edwards at the 9th Street address, probable cause exists to believe that firearms and the other items to be searched for and seized would be located at that address. Probable cause, not suspicion, is required.

Suppression Court Opinion, 9/2/22, at 6-8 (footnotes omitted).

Following our review, we conclude that the record supports the court's factual findings, and its application of those facts to the current law. We note that Yamilet Palacios and Edwards were captured on surveillance footage riding in the white BMW near Santos-Rivera when he was shot. Someone was seen leaning out of the front passenger side window of the BMW in the area where Santos-Rivera was shot. A casing was found at that location, which matched other casings found down the road in the direction the white BMW was traveling. Yamilet Palacios and Edwards were identified by a detective as the driver and front passenger, respectively, of the BMW. Yamilet Palacios and Edwards shared the same address, namely the 9th street address listed

on the warrant. However, police did not observe the BMW parked in the vicinity of Yamilet Palacios's residence shortly after the shooting or present any evidence that other eyewitnesses did; rather, police only observed the vehicle parked around the corner from the residence approximately **nine hours** after the shooting. **See** Affidavit of Probable Cause, 8/25/21, at ¶¶ 2, 18. It was unknown (at least in terms of the affidavit of probable cause) where the BMW may have gone in the interim; and, further, the search warrant was not executed until three days **after** the police saw the BMW around the corner from Yamilet Palacios's residence.

If the Commonwealth's categorical assumption about whether, how long, and where a suspect will retain firearms and clothing is rejected, as our Supreme Court has directed per **Jacoby**, then the evidence within the four corners of the affidavit failed to establish a "substantial nexus" between the shooting and residence. **See Jacoby**, 170 A.3d at 1085 (rejecting the trial court's "categorical assumption" that people "generally hold on to guns . . . and that, as such, probable cause to search for guns exists in apparent perpetuity" in support of its finding that probable cause existed to search a defendant's residence for a firearm fifteen months after the commission of a crime).[3] Instead, consistent with **Nicholson** and **Jacoby**, the fact that a

_____

[3] We are mindful of the Commonwealth's argument that in **Commonwealth v. Janda**, this Court upheld a search warrant and affirmed a probable cause

*(Footnote Continued Next Page)*

suspect uses a vehicle during the commission of a crime may give rise to probable cause to search the vehicle; but the fact that a suspect thereafter at some point uses that vehicle to return home does not, without more,[4] give rise to probable cause to search the residence, absent any other demonstration of a "substantial nexus" between the criminal activity and the residence, such as, for example, evidence that the suspect returned "directly" home after the criminal activity. *See Nicholson*, 262 A.3d at 1281. For these reasons, we cannot say the suppression court committed an error of law in

_____

determination where police obtained a search warrant seven months later for a suspect's residence to search for footwear the suspect had worn during a burglary, and concluded, in part, and apparently utilizing a categorical assumption, that "shoes, unlike drugs, are not an item commonly disposed of soon after they come into their owner's possession," and, therefore, there was a fair probability they would be found in the suspect's residence. 14 A.3d 147, 159 (Pa. Super. 2011). Similarly, in *Commonwealth v. Hutchinson*, this Court, again in reliance on categorical assumptions, upheld an order denying suppression of the fruits of the search of a robbery suspect's home, and concluded that "the items seized, a shirt and a gun, were each of a type reasonably likely to be found in the perpetrator's home, especially given the short period of time [unspecified] between the commission of the crimes and the application for the search warrant." 434 A.2d 740, 743 (Pa. Super. 1981). *Jacoby*'s prohibition on categorical assumptions casts doubt on the continuing viability of these holdings. *Contra* Commonwealth's Brief at 13-16 (arguing for application of *Janda* and *Hutchinson*).

[4] We emphasize that probable cause determinations are fact-intensive, and each case stands on its own specific fact pattern. *See*, *e.g.*, *Commonwealth v. Smith*, 979 A.2d 913, 917 (Pa. Super. 2009) (observing that the "question whether probable cause exists in a given circumstance is so fact-intensive that well-settled legal principles in themselves offer cold comfort") (internal citation and quotations omitted).

granting Yamilet Palacios's suppression motion and, therefore, affirm the order granting suppression.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/14/2023